UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MUZAFFAR LAKHANI,

        Plaintiff,                                   No. 18-14038

v.                                             Hon. Nancy G. Edmunds

CITY OF INKSTER,

        Defendant.

_____/

### OPINION AND ORDER GRANTING DEFENDANT'S
### MOTION FOR SUMMARY JUDGMENT [11]

Plaintiff Muzaffar Lakhani alleges Defendant, the City of Inkster, discriminated against him based on his national origin, race, and religion in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") when it refused to pay him severance benefits and retirement healthcare benefits.[1] The matter is now before the Court on Defendant's motion for summary judgment. (Dkt. 11.) Plaintiff opposes the motion. (Dkt. 16.) Defendant has filed a reply. (Dkt. 17.) The Court finds that the decision process would not be significantly aided by oral argument. Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), Defendant's motion will be decided on the briefs and without oral argument. For the reasons discussed below, the Court GRANTS Defendant's motion for summary judgment.

_____

[1] Plaintiff initially brought a number of both state and federal claims, but the Court declined to exercise supplemental jurisdiction over his state law claims and he filed an amended complaint omitting several of his federal claims. (*See* dkts. 3, 4.)

**I.      Background**

Plaintiff, a Muslim Asian-American of Pakistani descent, was hired by Defendant

in July 1998 as the Director of its Department of Public Services.  His employment was

terminated on January 18, 2013, approximately fourteen and-a-half years later.  (Dkt.

11-2, PgID 118.)  At the time of his discharge, he was the City Engineer.

Defendant has presented an affidavit from its current Treasurer, explaining that it

experienced significant reductions in property tax revenues as a result of the recession

that began in 2008.  (Dkt. 11-4, PgID 148.)  This eventually led to drastic budget cuts,

including massive reductions in Defendant's workforce and the elimination of numerous

management positions, including the position held by Plaintiff.  (*Id.* at PgID 148-49.)

In March 2013, Plaintiff filed a charge of discrimination with the EEOC, asserting

claims of employment discrimination based on national origin, religion, and age.  (Dkt.

11-9.)  More specifically, Plaintiff stated, in relevant part, "I am 56 years old of Pakistan

descent and of Muslim faith and I believe I was discharged on January 18, 2013,

because of my age, religion, and national origin."  The EEOC dismissed the charge and

issued its right to sue letter in August 2013, but Plaintiff did not file suit at the time.

Plaintiff believes he was entitled to severance benefits in the amount of

$64,407.33 at the time of his discharge.  Plaintiff testified that he was informed he would

have to sign a release of legal claims prior to receiving any severance benefits a few

months after being terminated in 2013.  (Dkt. 11-2, PgID 139.)  Plaintiff repeated his

request for severance benefits in 2018, but Defendant insisted on the execution of a

release.  (*See* dkt. 16-4.)  Plaintiff construed this requirement as a refusal to pay the

benefits.

In June 2017, Plaintiff applied for retirement healthcare benefits he believed he would be entitled to once he reached the age of 62 the following year.  (*See* dkt. 16-5.)  Defendant denied Plaintiff's request, maintaining he is not eligible for the benefits at issue because he worked for Defendant for less than twenty-five years.  Defendant testified, thru its current Treasurer, that its current program, providing retirees with a health insurance stipend, was adopted in 2013 in an effort to balance Defendant's budget.  (Dkt. 11-4, PgID 151-52.)  It replaced the retiree group health insurance plans in effect at the time of Plaintiff's hire.  (*Id.* at PgID 152.)  Defendant further testified that at no time has it ever provided a healthcare stipend under this program to any person who has worked for Defendant for less than twenty-five years.  (*Id.*)  Also in 2013, Defendant adopted a program providing "[n]ew hires on or after July 1, 2009 and probationary employees" with a retiree medical savings accounts, which is "100% vested after ten years of employment."  (*See id.* at PgID 152-53; dkt. 16-2, PgID 345.)

In September 2018, Plaintiff filed a second charge with the EEOC, asserting claims of discrimination based on race, religion, and national origin.  (Dkt. 16-6.)  More specifically, he stated, in relevant part, "[o]n or about 21 March 2018, I was denied retiree health care benefits.  I have evidence showing that a similarly situated former co-worker of a different race, national origin, and religion is receiving those retiree health care benefits that I have been denied."  Plaintiff commenced this lawsuit on December 23, 2018.

## II.    Legal Standard

Summary judgment under Federal Rule of Civil Procedure 56(a) is proper when "there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  When reviewing the record, "'the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor.'"  *United States S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (quoting *Tysinger v. Police Dep't of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)).  Furthermore, the "'substantive law will identify which facts are material,' and 'summary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Id.* at 327 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  When considering the material facts on the record, a court must bear in mind that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient."  *Anderson*, 477 U.S. at 252.

The moving party bears the initial burden "of establishing the 'absence of evidence to support the nonmoving party's case.'"  *Spurlock v. Whitley*, 79 F. App'x 837, 839 (6th Cir. 2003) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  "Once the moving party has met its burden, the nonmoving party 'must present affirmative evidence on critical issues sufficient to allow a jury to return a verdict in its favor.'"  *Id.* at 839 (quoting *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 403 (6th Cir. 1992)).

### III.    Analysis

Plaintiff does not bring a discriminatory discharge claim in this lawsuit, but rather alleges that Defendant discriminated against him by refusing to pay him severance benefits and retirement healthcare benefits.  Defendant argues that Plaintiff's claims based on the denial of severance benefits are time-barred.  It further argues that Plaintiff's claims stemming from the denial of healthcare benefits fail because he cannot

establish a prima facie case of discrimination or show that Defendant's proffered reason is pretextual.

### A.    Plaintiff's Title VII Claims - Denial of Severance Benefits

"Before a plaintiff alleging discrimination under Title VII can bring suit in federal court, []he must satisfy two administrative prerequisites: (1) by filing timely charges of employment discrimination with the EEOC, and (2) receiving and acting upon the EEOC's statutory notices of the right to sue." *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003) (internal quotation marks and citations omitted).  In Michigan, the charge with the EEOC must be filed within three hundred days "after the alleged unlawful employment practice occurred," 42 U.S.C. § 2000e-5(e)(1), and the civil action must be filed ninety days after the EEOC issues a right to sue letter, § 2000e-5(f)(1). "As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010).  This rule serves the dual purpose of giving an employer notice of the alleged discriminatory conduct, and the EEOC and the employer then have an opportunity to settle the dispute thru conference, conciliation, and persuasion.  *Id.*

Here, Plaintiff does not dispute that he did not file a timely lawsuit after the EEOC issued its right to sue letter in response to his first EEOC charge.[2]  Rather, Plaintiff argues that because Defendant conditioned the payment of his severance benefits on

---

[2] Defendant asserts that Plaintiff's first EEOC charge only challenged his discharge, not the denial of severance benefits.  Because the claims raised in the first charge are not at issue here, there is no need for the Court to ascertain the scope of that charge.

the execution of a release of claims in 2018 and he filed a second EEOC charge that year, his claims are timely.

Plaintiff was aware that Defendant would not pay him any severance benefits unless he signed a release of legal claims in 2013. While Plaintiff repeated his request for severance benefits and Defendant reiterated its demand for the execution of a release in 2018, "[r]epeated requests for further relief from a prior act of discrimination will not set the time limitations running anew." *See EEOC v. McCall Printing Corp.*, 633 F.2d 1232, 1237 (6th Cir. 1980) (citation omitted). Thus, the Court finds that Plaintiff's Title VII claims based on the denial of severance benefits are time-barred.[3] Moreover, Plaintiff's second EEOC charge only complained about the denial of retiree healthcare, not severance, benefits. (*See* dkt. 16-6.) Therefore, even if Defendant's refusal to pay Plaintiff severance benefits in 2018 did constitute a new act of alleged discrimination, these claims are barred due to Plaintiff's failure to exhaust his administrative remedies. *See Younis*, 610 F.3d at 361-62. In sum, Defendant is entitled to summary judgment on Plaintiff's Title VII claims based on the denial of severance benefits.

**B.    Plaintiff's Title VII Claims - Denial of Retirement Healthcare Benefits**

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions,

---

[3] The record shows that Defendant's insistence on the execution of a release prior to paying Plaintiff any severance benefits in 2018 was part of a settlement offer. (*See* dkt. 16-4.) Defendant argues that because this offer was made "subject to [Michigan Rule of Evidence] 408," it is inadmissible for purposes of this motion. In light of the Court's dismissal of Plaintiff's claims stemming from the denial of severance benefits, the Court need not address this issue or otherwise consider whether this offer may constitute an adverse act for purposes of a Title VII claim.

or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Because Plaintiff does not present any direct evidence of discrimination, his claims are analyzed under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). To establish a prima facie case of Title VII discrimination, Plaintiff must show that (1) he is a member of a protected class, (2) he was subject to an adverse employment decision, (3) he was qualified for the position, and (4) he was replaced by someone outside the protected class or treated differently than a similarly situated employee outside his protected class.[4] *See McDonnell Douglas*, 411 U.S. at 802; *Smith v. City of Salem*, 378 F.3d 566, 570 (6th Cir. 2004). The burden of proof then shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802. Once Defendant articulates such a reason, the burden of proof returns to Plaintiff to rebut the proffered reason by showing it was a pretext for discrimination. *Id.* at 804. Plaintiff may show pretext by demonstrating that the proffered reason 1) had no basis in fact, 2) did not actually motivate the adverse action, or 3) was insufficient to warrant the action. *Chen*, 580 F.3d at 400.

Here, Plaintiff argues he can establish a prima facie case of discrimination because a former co-worker by the name of Ron Wolkowicz, who is of a different race,

---

[4] Defendant argues that Plaintiff cannot establish a prima facie case of discrimination because he was not replaced and his duties were merely reassigned to another employee. Because Plaintiff challenges the denial of retirement healthcare benefits, not his discharge, and Defendant does not contest the other elements of Plaintiff's prima facie case, Plaintiff can meet his burden by showing he was denied healthcare benefits while a similarly situated employee from outside his protected class was provided with those same benefits.

religion, and national origin, was provided with healthcare benefits after his retirement, while he was not. However, Defendant has testified that only employees who were employed by Defendant for at least twenty-five years are eligible for these benefits. Because it is undisputed that Wolkowicz worked for Defendant for over twenty-five years while Plaintiff worked for Defendant for about fourteen and-a-half years,[5] Wolkowicz is not similarly situated to Plaintiff. *See Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004) (noting that to be similarly situated, in relevant part, the individual with whom the plaintiff compares himself must be "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it") (internal quotation marks and citations omitted). Thus, Plaintiff has not established the fourth prong of his prima facie case—that he was treated differently than a similarly situated employee from outside his protected class.

And even if Plaintiff could establish a prima facie case of discrimination, he has not demonstrated that Defendant's proffered reason for its denial of his request for healthcare benefits—that he did not work for Defendant for at least twenty-five years—is pretextual. Plaintiff appears to question whether this reason actually motivated the adverse action by arguing that an employee is only required to have ten years of seniority with Defendant to be vested in his or her retirement healthcare benefits. However, the record shows that this ten-year language applies to a program for which Plaintiff is not eligible. (*See* Dkt. 11-4, PgID 152-53; Dkt. 16-2, PgID 345.) Moreover,

---

[5] While the record is not clear on this point, it appears Wolkowicz was employed by Defendant for thirty-six years.

"[a] reason cannot be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *White v. Telcom Credit Union*, 874 F. Supp. 2d 690, 707 (E.D. Mich. 2012) (internal quotation marks and citations omitted). There is no evidence in the record that would give rise to an inference that discrimination was the real reason for Defendant's actions. In sum, Defendant is entitled to summary judgment on Plaintiff's Title VII claims stemming from the denial of retirement healthcare benefits.

## IV.    Conclusion

For the above-stated reasons, Defendant's motion for summary judgment is GRANTED.

SO ORDERED.

> s/Nancy G. Edmunds
> Nancy G. Edmunds
> United States District Judge

Dated: March 30, 2020

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 30, 2020, by electronic and/or ordinary mail.

> s/Lisa Bartlett
> Case Manager